UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 04-12293-WGY |
| RECOVERY EXPRESS, INC., | ) | |
| in its own right, and | ) | |
| d/b/a INTERSTATE DEMOLITION AND | ) | |
| ENVIRONMENTAL CORP., | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

YOUNG, D.J.                                     February 1, 2006


I.    INTRODUCTION

This is a breach of contract and related equitable action

brought by the plaintiff, CSX Transportation, Inc. ("CSX"),

against the defendants, Recovery Express, Inc. ("Recovery") and

Interstate Demolition and Environmental Corp. ("IDEC").  The case

against Recovery turns on the application of that doctrine within

the law of agency known as "apparent authority"; specifically,

how large a cloak of such authority is provided by access to an

e-mail address with a defendant's domain name.

## A.    Undisputed Facts

CSX is in the business of selling out-of-service railcars and parts.  See Compl. [Doc. No. 1] ("Compl.") ¶ 8.  It is a Virginia corporation with its principal place of business in Florida.  Compl. ¶ 3.  Recovery is a Massachusetts corporation with its principal place of business in Boston.  Compl. ¶ 4; Answer [Doc. No. 8] ¶4 ("Admitted").  IDEC was a Delaware corporation with its principal place of business at the same address in Boston.  Affidavit of Nancy E. Marto [Doc. No. 18] ("Marto Aff.") ¶¶ 4, 8 & Ex. B.  It is now defunct.  Marto Aff. ¶ 2.  At all relevant times, IDEC and Recovery shared offices in Boston.  Marto Aff. ¶ 4.

On August 22, 2003, Albert Arillotta ("Arillotta"), a "partner" at IDEC, Id. ¶ 3, sent an e-mail to Len Whitehead, Jr. ("Whitehead") of CSX expressing interest in buying "rail cars as scrap", Mem. in Support of Mot. for Summ. J. [Doc. No. 17] ("Recovery's Mem."), Ex. A, E-mail from Albert Arillotta to Len Whitehead, Jr. (Aug. 22, 2003) ("the E-mail").  Arillotta represented himself to be "from interstate demolition and recovery express".  Id.  The e-mail address from which Arillotta sent this inquiry was "albert@recoveryexpress.com".  Id.  The entire e-mail -- horrendous grammar and all -- is reproduced here:

```
From:    Albert Arillotta [albert@recoveryexpress.com]
Sent:    Friday, August 22, 2003 4:57 PM
```

```
To:        Whitehead, Len Jr.
Subject:   purchase of out service railcars

     lynn this is albert arillotta from interstate
demolition and recovery express we are interested in
buying rail cars for scrap paying you a percentage of
what the amm maket indicator is there are several
locations i suggest to work at the exsisting location
of the rail cars. we will send you a brocheure and
financials per your request our addressis the
following:

     interstate demolition/recoveryexpress
      180 canal street 5th floor boston mass 02114
   phone number- 617-523-7740
    fax number 617-367-3627
   email address albert @recoveryexpress .com

     thank you for your time
```

There apparently were subsequent phone calls between Whitehead

and Arillotta, Decl. of Len Whitehead, Jr. [Doc. No. 20]

("Whitehead Decl.") ¶ 2, but the substance of the calls is not

recounted. Id. CSX alleges that it prepared and forwarded sales

order forms which "confirm[ed] the agreed[-]upon terms [of the

sale] to IDEC." Compl. ¶ 9. Neither CSX nor Recovery has

provided copies of these forms. Apparently, Arillotta and

Whitehead proceeded with this proposed deal.

     The railcars were "delivered . . . to the location specified

by Arillotta . . . ." Compl. ¶ 11. Recovery claims that this

location was, in fact, CSX's own railyard, to which Arillotta

went himself, disassembled the cars, and transported them away.

Recovery's Mem. at 3. There is no direct evidence on point, but

the original e-mail from Arillotta supports Recovery's assertion.

The E-mail at 1 ("[I] suggest work at the existing location of the rail cars."). There is no evidence proffered as to the current disposition of the scrap railcars (i.e., where they are) or their proceeds.

After delivery, CSX sent invoices for the scrap railcars totaling $115,757.36 addressed to IDEC at its Boston office (shared with Recovery). Recovery's Mem., Ex. B. Nancy E. Marto ("Marto"), officer and registered agent of Recovery and "partner" in IDEC, states that, upon receipt of the invoices, she attempted several times to contact Whitehead to inquire about them. Marto Aff. ¶ 10; see also Pl.'s Opp'n to Def. Recovery Express's Mot. for Summ. J. [Doc. No. 19] ("Pl.'s Mem."), Ex. A. She says that Whitehead never returned her calls. Marto Aff. ¶ 10; Pl.'s Mem., Ex. A. This was apparently because Arillotta had told him not to speak to her.[1] Marto Aff. ¶ 10. Not until a check from Arillotta to CSX purporting to pay the invoices bounced did Whitehead call Marto. Id.

Because Recovery and IDEC refused to pay CSX, CSX brought this action alleging (1) breach of contract, Compl. ¶¶ 14-18, (2) account stated, Compl. ¶¶ 19-22, (3) unjust enrichment, Compl. ¶¶ 23-26, and (4) quantum meruit, Compl. ¶¶ 27-31.

---

[1]Interestingly, the reason IDEC has ceased to exist is because of fraud by Arillotta. Marto Aff. ¶ 5. It is unclear if the fraud is related to this case.

Whitehead states that "[a]t all times during [his] dealing with Mr. Arillotta, [he] believed [Arillotta] was representing, and authorized to act on behalf of, Recovery Express and Interstate Demolition." Whitehead Decl. ¶ 6. Whitehead apparently based this belief on the E-mail's domain name -- recoveryexpress.com[2] -- and the representations of Arillotta to him both in the E-mail and in subsequent telephone conversations. Id. ¶¶ 2-3. All invoices were addressed to IDEC, Recovery's Mem., Ex. B, though Whitehead states that Arillotta represented that he was "acting on behalf of Recovery Express", Whitehead Decl. ¶ 2. "At no time prior to CSX's delivery of the rail cars . . . did anyone inform [Whitehead] that Mr. Arillotta was not authorized to represent or transact business on behalf of either Recovery Express or Interstate Demolition." Id. ¶ 6.

Recovery claims that Arillotta never worked for it. Recovery's Mem. at 3. How Arillotta acquired a Recovery e-mail address is explained thus: Marto and Thomas R. Trafton ("Trafton"), Recovery's President and Treasurer, Marto Aff., Ex. A., became involved in another venture along with Arillotta and Dominic Ignagni -- IDEC. Id. ¶¶ 2-3. Because of Marto's and

---

[2]With regard to e-mail addresses, the domain name is anything after the "@" symbol. It is a more user-friendly way of identifying the Internet protocol (IP) address needed by the computer network to deliver correctly the e-mail message. See Christopher G. Clark, The Truth in Domain Names Act of 2003 and a Preventative Measure to Combat Typosquatting, 89 Cornell L. Rev. 1476, 1483 & n.40 (2004).

Trafton's "personal interest in IDEC", the "fledgling" company was allowed to share the offices and some resources of Recovery, including telephones and facsimile machines -- and, apparently, e-mail services.  Id. ¶ 4.  Other than physical resources, there is no evidence that Recovery ever shared anything with IDEC -- assets, funds, books of business, bank accounts, or insurance coverage.  Id. ¶¶ 11-12.

### B.    Procedural Posture

CSX filed its Complaint [Doc. No. 1] in October of 2004 alleging breach of contract by Recovery and IDEC and related equitable claims.  IDEC is now defunct, Marto Aff. ¶ 2, and has made no appearance in this litigation.  Recovery has moved for summary judgment [Doc. No. 16].

### C.    Summary Judgment Standard

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the non-moving party, no genuine issues of material fact remain, and the moving party is entitled to judgment as matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A "genuine" issue of fact is one that a reasonable jury, on the record before the Court, could resolve in favor of either party.  Anderson, 477 U.S. at 248.  A fact is material when it "might affect the

outcome of the suit under the governing law." Hayes v. Douglas
Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993) (citing Anderson,
477 U.S. at 248).

In making its determination, the Court must view the
evidence in the light most favorable to the non-moving party and
draw all reasonable inferences in its favor. Anderson, 477 U.S.
at 255. The movant has the initial burden of production, which
it can meet either by offering evidence to disprove an element of
the plaintiff's case or by demonstrating an "absence of evidence
to support the non-moving party's case." Celotex Corp. v.
Catrett, 477 U.S. 317, 325 (1986). Once the movant has met its
burden, the non-moving party must "go beyond the pleadings, and
by [its] own affidavits, or by the depositions, answers to
interrogatories, and admissions on file, designate specific facts
showing there is a material issue for trial." Id. at 323
(internal quotation marks omitted). When facts asserted by the
moving party go unrebutted, the Court must still search the
record on its own for genuine issues of material fact. See
Stephanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922,
930 (1st Cir. 1983).

### D.   Jurisdiction

Federal jurisdiction is proper under Title 28, Section 1332
(diversity) of the U.S. Code. CSX is a Virginia corporation with

its principal place of business in Florida.  Compl. ¶ 3.

Recovery is a Massachusetts corporation with its principal place

of business in Boston.  Id. ¶ 4; Answer ¶ 4 ("Admitted.").  IDEC

is a now-defunct corporation which was chartered in Delaware,

Marto Aff. ¶ 2 & Ex. B, and had its principal place of business

in Boston, Marto Aff. Ex. A.  The amount in controversy exceeds

$75,000.  See Compl. ¶¶ 16-18 (claiming damages of $115,757.36,

plus interest); Recovery's Mem., Ex. B (showing invoices sent to

Recovery's address totaling the same).

## II.  DISCUSSION

### A.    Contract (Legal) Claims

At base, what this case is about is CSX's attempt, having

been duped by a fraudulent agent of Recovery, to shift the

consequences of its own gullibility to someone else.  The primary

legal vehicle by which it seeks to do this is the contract

doctrine of "apparent authority".

First, however, CSX genuflects to the possibility that

Arillotta was granted actual authority by Recovery.  Compl. ¶ 7.

"An agent acts with actual authority when, at the time of taking

action that has legal consequences for the principal, the agent

reasonably believes, in accordance with the principal's

manifestations to the agent, that the principal wishes the agent

so to act."  Restatement (Third) of Agency (Tentative Draft No.

2) (Mar. 2001) ("Restatement"), § 2.01; see also Theos & Sons,

Inc. v. Mack Trucks, Inc., 431 Mass. 736, 743-44 (2000). What

matters is the agent's reasonable belief, derived from actions of

the principal, about the extent of his authority. CSX brings

forth no evidence raising a genuine issue -- as it must under

Celotex, 477 U.S. at 323 -- as to whether Arillotta acted with

the actual authority of Recovery. Indeed, the only possible

inference from evidence in the record is that he did not. See

Marto Aff. ¶¶ 1-3, 7-8 (indicating that Arillotta was an officer

only of IDEC). So weak is CSX's allegation of actual authority,

CSX fails even to mention it in its opposition to Recovery's

motion for summary judgment. See Pl.'s Mem. at 4-6 (arguing only

apparent authority).

The case, then, rests on the doctrine of apparent authority.

"Apparent authority is the power held by an agent or other actor

to affect a principal's legal relations with third parties when a

third party reasonably believes the actor has authority to act on

behalf of the principal and that belief is traceable to the

principal's manifestations." Restatement at § 2.03. It "is not

established by the putative agent's words or conduct, but by

those of the principal." Rubel v. Hayden, Hardin & Buchanan,

Inc., 15 Mass. App. Ct. 252, 255 (1983); see also Theos & Sons,

431 Mass. at 745. Moreover, apparent authority "may exist only

when the plaintiff reasonably may believe as a result of the

principal's words or conduct that the agent is authorized to act on its behalf." Moussa v. Abdel-Kader, 12 Mass. L. Rptr. 363, 2000 WL 1736942, at *3 (Mass. Super. Ct. 2000) (Gants, J.). Finally, "[a]pparent authority does not come into being until a third party learns facts from which he reasonably infers that the agent is authorized." Peters v. Haymarket Leasing, Inc., 64 Mass. App. Ct. 767, 773 (2005) (internal quotation marks and citation omitted).

In what looks to be an issue of first impression, the facts of this case set up the question whether an e-mail domain name, by itself, cloaks a purported agent with authority sufficient as matter of law to be called "apparent". Because apparent authority depends on that knowledge held by Whitehead and CSX of Arillotta's authority, which knowledge was derived from actions of Recovery, the only relevant conduct by Recovery is that it issued Arillotta an e-mail address with its domain name. Such associations as Recovery having the same offices, mailing address, phone number, or fax number are red herrings[3]; these facts -- if Whitehead even possessed them prior to entering the contract -- emanated from Arillotta by way of his e-mail

---

[3]Surprisingly, CSX makes no alter-ego argument, though on these facts one would appear at least plausible. If Recovery were deemed the alter-ego of IDEC, then the actual authority of Arillotta would be of greater relevance. Though there is some evidence which may have carried CSX through summary judgment, because the theory is not pressed, the Court deems that argument waived.

signature or telephone representations.  There is no evidence of
the manifestation of those facts by Recovery to Whitehead and CSX
(i.e., by way of its website, as CSX asserted at oral argument)
until after the contract was entered and collection efforts had
begun.[4]  Whitehead Decl. ¶ 5.

The only act taken by Recovery known to Whitehead and CSX
prior to entering the contract and upon which Whitehead could
rely, was its issuance to Arillotta of an e-mail address sporting
Recovery's domain name (@recoveryexpress.com).  The Court holds
that Whitehead and CSX were unreasonable, as matter of law, in
their reliance solely on an e-mail domain name.  Such a
manifestation by Recovery cannot be sufficient to sustain a claim
of apparent authority.  Granting an e-mail domain name, by
itself, does not cloak the recipient with carte blanche authority
to act on behalf the grantee.  Were this so, every subordinate
employee with a company e-mail address -- down to the night

---

[4]The same can be said for the authority conveyed by
Arillotta's title at IDEC.  Whatever authority a title may convey
to a third party, nothing in the record indicates that Whitehead
and CSX even knew what Arillotta's title was.  See The E-mail
(stating that Arillotta was "from" Recovery and IDEC); Whitehead
Decl. ¶ 2 ("Mr. Arilotta told me that he was acting on behalf of
Recovery Express . . . ." (emphasis added)).  "If the third party
. . . is unaware of the agent's position . . . , the principal is
not accountable for the third party's belief in the agent's
authority.  . . .  The third party may . . . lack a basis
reasonably to believe that the agent is authorized to bind the
organization.  Such a basis would be lacking, for instance, if
the third party is unaware of the agent's position within the
organization."  Restatement at § 3.03, cmt. c.

watchman -- could bind a company to the same contracts as the president.  This is not the law.

Though e-mail communication may be relatively new to staid legal institutions, the results in analogous low-tech situations confirm this conclusion.  The Court could find no cases where, for example, giving someone a business card with the company name or logo, access to a company car, or company stationery, by themselves, created sufficient indicia of apparent authority. See Muscletech Research & Dev., Inc. v. East Coast Ingredients, LLC, No. 00-CV-0753A(F), 2004 WL 941815, at *32 (W.D.N.Y. Mar. 25, 2004) (holding that issuance of a company credit card, business cards with company logo, possession of company paraphernalia, and appearing in company advertisements was insufficient to create apparent authority); Asplund v. Selected Investments, Inc., 103 Cal. Rptr. 2d 34, 48-49 (Ct. App. 2001) (issuance of a business card and display of a plaque insufficient to create apparent authority); Raclaw v. Fay, Conmy and Co., 668 N.E.2d 114, 117 (Ill. App. Ct. 1996) (permitting the occupation of offices, the use of telephones and receptionist, the receipt of mail at company offices, and access to stationery insufficient to create apparent authority); McFarland v. Entergy Mississippi, Inc., No. 2003-CT-00538-SCT, -- So. 2d --, 2005 WL 2458870, at *6 (Miss. Oct. 6, 2005) (holding that putting a purported agent in electric company vehicle, when plaintiff knew that volunteers

were assisting crews, was insufficient to create apparent authority); Alexander v. ABS Global, Inc., 179 S.W.3d 385, 389-390 (Mo. Ct. App. 2005) (holding that providing nitrogen tanks with company logo, billing for services with invoices bearing company logo, sending postcards claiming to be a company representative, distributing business cards indicating representative status, and giving out calendars with company logo to be insufficient to create apparent authority); Cowburn v. Leventis, 619 S.E.2d. 437, 448 (S.C. Ct. App. 2005) (holding that supplying forms and business cards were the only actions of defendant and were not sufficient to create apparent authority); cf. Thesenga Land Co. v. Cirrus Warehouse, Inc., No. C5-03-370, 2003 WL 22889499, at *1-2 (Minn. Ct. App. Dec. 9, 2003) (finding support for apparent authority when agent used business card designating him as vice president and when agent met with representatives of plaintiff and directed and negotiated contract terms); Dorna USA, LLC v. Lighthouse Superscreens, Inc., No. 02 Civ. 8973(RLC), 2004 WL 2721239, at *2 (S.D.N.Y. Nov. 29, 2004) (holding that sharing website and e-mail addresses, using identical business cards, and "collectively behav[ing] 'as a single production and sales team'", as well as other facts "too numerous to detail" supported the existence of apparent authority).

13

An e-mail domain name is sufficiently analogous to business cards, company vehicles, and letterhead for these cases to be persuasive. Those indicia of apparent authority all convey some degree of association between the purported principal and agent. By themselves, however, no reasonable person could conclude that apparent authority was present. The same is true with e-mail domain names.

In the end, CSX and Whitehead should have been more suspicious of an unsolicited, poorly written e-mail that arrived late one Friday afternoon. There are means by which CSX could have protected itself (e.g., requiring a purchase order form from IDEC or Recovery).[5] Before delivering goods worth over $115,000 to a stranger, one reasonably should be expected to inquire as to the authority of that person to have made such a deal. Given the anonymity of the Internet, this case illustrates the potential consequences of operating -- even in today's fast-paced business world -- as did CSX.[6]

_____

[5] "Parties can feel confident that they have formed binding contracts while communicating over open networks only if they use reliable authentication procedures." Jane Kaufman Winn, Open Systems, Free Markets, and Regulation of Internet Commerce, 72 Tulane L. Rev 1177, 1180 (1998) (discussing potential legal problems and technical solutions in Internet commerce).

[6] Because CSX's second cause of action, account stated, Compl. ¶¶ 19-22, depends upon the existence of a contract in the first place, summary judgment will also be granted as to that count as well. See Chace v. Trafford, 116 Mass. 529, 532 (1875) ("An 'account stated' is an acknowledgment of the existing condition of liability between the parties."); Bucklin v. Nat'l

**B.    Equitable Claims**

CSX's last two claims are equitable in nature and rest on the unjust enrichment of Recovery.  Compl. ¶¶ 23-31.  See Salamon v. Terra, 394 Mass. 857, 859 (1985) (equating "unjust enrichment" and "quantum meruit" as quasi-contract actions -- contracts implied in law).  Central to such claims is proof that Recovery was actually enriched at the expense of CSX -- i.e., that CSX actually conferred a benefit upon Recovery.  See id. ("The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party." (emphasis added)).  CSX has submitted no evidence that either the railcars or money from sale of the railcars benefitted Recovery.  Accordingly, summary judgment is proper as to CSX's equitable claims as well.

---

Shawmut Bank, 355 Mass. 338, 341 (1969) ("An account stated 'cannot be made the instrument to create a liability where none before existed . . . .'" (quoting Chase v. Chase, 191 Mass. 556, 562 (1906)).  Because there was no apparent authority to enter into a contract on behalf of Recovery, no liability ever existed as between it and CSX.  Moreover, there is no record evidence that Recovery affirmed the debt created by Arillotta.  See Milliken v. Warwick, 306 Mass. 192, 196-97 (1940) (holding that an account stated requires either an express or implied assent to the debt by the debtor); Meredith & Grew, Inc. v. Worcester Lincoln, LLC, 64 Mass. App. Ct. 142, 152-53 (2005).

## III. CONCLUSION

Because there is no genuine issue of material fact as to whether Arillotta possessed the apparent authority of Recovery to enter into a contract with CSX -- he did not possess such authority -- and because there is no evidence that Recovery had the benefit of CSX's railcars, Recovery's Motion for Summary Judgment [Doc. No. 16] is ALLOWED and judgment will enter for it.[7]

SO ORDERED.

WILLIAM G. YOUNG
DISTRICT JUDGE

---

[7]As IDEC has never been sued as a legal entity, but only as another business name for Recovery, and since no independent claim has been made against it, see supra note 3, IDEC is not a proper party to this litigation.  It is appropriate, therefore, that judgment enter.